UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

YALE LARRY BALCAR,                                                                            Plaintiff,

v.                                                          Civil Action No. 3:16-cv-P428-DJH

AARON SMITH *et al.*,                                                  Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007). For the reasons set forth below, the action will be dismissed.

### I. SUMMARY OF COMPLAINTS

Plaintiff is currently incarcerated at Kentucky State Reformatory (KSR). He brings suit against Aaron Smith, the Warden at KSR, and Aramark Food Service.

In his complaint, Plaintiff alleges that he is being served unhealthy, inadequate, and unsanitary food by Aramark. Plaintiff first states that he is allergic to "peanut, lentil, green pea, soybean, tomato, carrot, potato, onion, pumpkin, all bean, and green bean." He then states that "[95%] of the time plaintiff eat only rice or noodle and apple sauce." He also alleges that Aramark has very little food that does not contain soy, which "seriously affect[s]" his health. He further alleges that the prisoners' food is prepared in "fifty or dirt conditions" and that he has had hair and a "rat dropping" in his food. He further writes that the prisoners' food is "not cook halfway and meat is raw in the middle." Plaintiff states he has a right to a nutritious diet and one that complies with the "special diet" ordered by his doctor. As relief, Plaintiff seeks monetary

and punitive damages. He also requests "a preliminary and permanent injunction ordering Defendants Warden Smith and Aramark to give Plaintiff Balcar his Special Diet and the right nutritious standards and safe for Plaintiff's health."

Plaintiff has also filed two "motions for preliminary and permanent injunctions" (DNs 7 & 9), which the Court construes as amended complaints. In the first motion/first amended complaint (DN 7), Plaintiff restates his alleged food allergies. He then asserts that he needs a diet with "real beef," pork, chicken, and fish, "which Aramark cannot refuse to do." Plaintiff also states that Aramark is not meeting his "vegetable needs" and that they feed Plaintiff rice every day. Plaintiff further alleges that the kitchen at KSR has roaches and rats. Plaintiff then asks for a preliminary and permanent injunction ordering Aramark to "meet [his] Special Diet, the right nutritious food, and the right amount of food on his tray. An real beef, pork, chicken, and fish for his special diet that is a life necessity."

In Plaintiff's second motion/second amended complaint (DN 9), Plaintiff alleges that he is being punished "by not getting pork or chicken served on his meals because of the Muslim Religious Diet and this is a First Amendment claim." He states that KSR and Aramark discriminate against him by "eating a Muslim diet. Treat plaintiff poorly on Medical Diet because religion belief. Plaintiff cannot get pork or chicken because of the Muslim Religion Diet." Plaintiff further states that the Religious Freedom Restoration Act "provides and protects Plaintiff from Muslim Diet." He also writes that all prisoners are protected by the Religious Land Use and Institutionalized Person Act and that the Fourteenth Amendment provides all individuals with "equal protection . . .[which] means that a prison cannot make special rules or give special benefits to members of only one group of religious, or their Special foods or Diets." As relief, Plaintiff seeks an injunction ordering Aramark to feed Plaintiff and all prisoners pork

and chicken at least once a week. He also asks the Court to "grant an Order that all prisoners is not punish to eat pork and chicken by the Muslim Religious Diet and order Aramark to feed pork and chicken to all prisoners."

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this

standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc*. v. *Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Absent either element, a section 1983 claim will not lie. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. Eighth Amendment Claim

#### 1. Deliberate Indifference to a Serious Medical Need

An Eighth Amendment claim requires a plaintiff to prove two distinct components - one objective and one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized

4

measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1970) (citations and internal quotation marks omitted). Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id.*

Courts have recognized two situations in which food allergies may constitute a serious medical need.[1] The first is if the diet being served to an inmate poses a "sufficiently serious" injury or medical consequence to the inmate's health. *See, e.g.*, *Sweeting v. Miller*, No. 7:14CV187, 2015 U.S. Dist. LEXIS 105839, at *8 (W.D. Va. Aug. 12, 2015) (finding no claim where the only reaction inmate suffered from eating a food he was supposedly allergic to was a swollen tongue); *Joseph v. Mercer Cty. Comm'rs*, No. 3:12-CV 0847, 2012 U.S. Dist. LEXIS 171097, at *35-36 (N.D. Ohio Dec. 3, 2012) (no claim where plaintiff was allegedly served food he was allergic to but had no allergic reaction or other injury as a result).

Food allergies may also constitute a serious medical need if they prevent an inmate from receiving a nutritionally adequate diet. *See, e.g.*, *Swinton v. Wright*, No. 3:16-cv-659 (SRU), 2016 U.S. Dist. LEXIS 83555, at *3-4 (D.C. Conn. June 28, 2016); *Sweeting v. Miller*, 2015 U.S. Dist. at *7; *Escalante v. Huffman*, No. 7:10-cv-00211, 2011 U.S. Dist. LEXIS 81382 (W.D. Va. July 26, 2011) (report and recommendation), adopted by 2011 U.S. Dist. LEXIS 90520 (Aug. 15, 2011).

Here, Plaintiff has not alleged that he suffered any serious medical consequence as a result of the diet he has been served at KSR. And, although Plaintiff does claim that this diet is nutritionally inadequate, he not provided any allegations which support this claim. To show inadequate nourishment, courts typically require evidence of a connection between the

---

[1] Although Plaintiff's complaint indicates that he is on a "special diet" which Defendants allegedly will not provide, he never explains what this diet is. Instead, he only lists the foods he is allegedly allergic to. Thus, the Court presumes that his "special diet" consists of being served foods to which he is not allergic and that otherwise meet his nutritional needs.

challenged diet regimen and substantial weight loss. *See, e.g.*, *Sweeting v. Miller*, 2015 U.S. Dist. LEXIS, at *8 (holding no Eighth Amendment claim where inmate claimed special allergy diet had caused weight loss but had provided no evidence of the severity of his weight loss); *Witschi v. N.C. Dep't of Pub. Safety*, No. 1:14-cv-68-FDW, 2014 U.S. Dist. LEXIS 103300, at *7 (W.D.N.C. July 29, 2014) (finding no Eighth Amendment claim despite plaintiff's allegation that he was not being fed a sufficient diet that complied with medical orders because he did not allege facts suggesting that his health had deteriorated as a result of his diet regimen); *Kemp v. Drago*, No. 1:12-1481-JFA-SVH, 2013 U.S. Dist. LEXIS 113430, at *21 (D.S.C. July 15, 2013) (holding that "Plaintiff's allegation of a seventeen-pound weight loss does not state a cognizable claim" of inadequate nourishment); *Escalante*, 2011 U.S. Dist. LEXIS 81382 at *9 (allowing inmate to proceed to trial on his food allergy claim where the record showed he had lost over 34 pounds as a result of his challenged diet order).

      Finally, Plaintiff repeatedly asserts that he needs "real beef, pork, chicken, and fish," in his special diet because these are a "life necessity." He also indicates that he is not receiving enough vegetables. However, while Plaintiff may wish the prison menu had more variety, prison food is not required to be tasty or widely varied. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). Indeed, the Sixth Circuit has held that a diet of solely a food loaf does not violate the Eighth Amendment when nutritional and caloric requirements are met. *See, e.g., Payton-Bey v. Vidor*, No. 94-2472, 1995 U.S. App. LEXIS 32928, at *1 (6th Cir. Oct. 12, 1995). Thus, Plaintiff's allegations do not state a constitutional claim because the mere fact that Plaintiff may not have received the types of food he desires does not mean that Plaintiff is denied sufficient food on a daily basis or that he cannot maintain his health based on the diet provided to him. *Sims v. Mich. Dep't of Corr.*, 23 F. App'x 214, 216 (6th Cir. 2001). *See also Dotson v.*

*Calhoun Cty. Sheriff's Dept.*, No. 1:07-cv-1037, 2007 U.S. Dist. LEXIS 99726, at *12 (W.D. Mich. Dec. 13, 2007) (holding no Eighth Amendment claim where plaintiff alleged he was served insufficient amounts of meat, fruit, and vegetables but did not allege an overall insufficient amount of food or deterioration of health as a result); *Shaw v. Worley*, No. 5:07CV-P35-R, 2007 U.S. Dist. LEXIS 62469, at *6 (W.D. Ky. Aug. 23, 2007) (dismissing Eighth Amendment claim against food service provider that complained of limitations on amounts and types of fruits and other dietary components but did not allege failure to incorporate all food groups or inadequate caloric allotment).

Based upon the above, the Court will dismiss Plaintiff's claim for deliberate indifference to a serious medical need for Defendants' failure to provide him adequate nutritious food that complies with his "special diet" because it fails to state a claim upon which relief may be granted.

## 2. Conditions-of-Confinement Claims

In his complaint, Plaintiff also alleges that the prisoners' food is prepared in dirty conditions and that he has personally had "hair" and a "rat dropping" in his food. He also alleges that that there are roaches and rats at KSR and contends that the prisoners' food is "not cook halfway and meat is raw in the middle." The Court construes these allegations as conditions-of-confinement claims under the Eighth Amendment. The Supreme Court has held that "extreme deprivations are required to make out a conditions-of-confinement claim . . . [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9, (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981)). In other words, "[n]ot every unpleasant experience a prisoner might endure while

incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cit. 1987).

Courts have consistently held that isolated incidents of foreign bodies, even rodents and insects, surfacing in the food served to prisoners do not constitute an Eighth Amendment violation. *Tucker v. Rose*, 955 F. Supp. 810, 815 (6th Cir. 1997) (citing *Estelle,* 429 U.S. at 106). "The fact that the [prison] food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation." *Smith v. Younger*, No. 98-5482, 1999 U.S. App. LEXIS 20168, at *5 (6th Cir. Aug. 9, 1999) (affirming district court's dismissal of plaintiff's Eighth Amendment claim based on the presence of a worm in her peanut butter). *See also Fant v. Jones*, No. CV 14-3574-SJO (SP), 2015 U.S. Dist. LEXIS 147657, at *7-8 (C.D. Cal. Sept. 14, 2015) (finding no Eighth Amendment claim where the plaintiff alleged that on three occasions over a two-year period he was served food with insects either in his food or on his tray); *Wiley v. Dep't. of Corr.*, No. 11-97-HRW, 2012 U.S. Dist. LEXIS 166385, at *22-23 (E.D. Ky. Nov. 21, 2012) (one incident of discovering dead rat in soup not actionable); *Miles v. Konvalenka*, 791 F. Supp. 212 (N.D. Ill. 1992) (holding single instance of finding mouse in food not actionable). Here, the Court reads Plaintiff's complaint to allege that, in the entire time he has been incarcerated at KSR, he has found hair in his food on one occasion and a "rat dropping" on another occasion. He also seems to indicate that some inmate has reported a fly in his food. Based upon the above-cited case law, the Court finds that these alleged isolated incidents of foreign objects in Plaintiff's food do not rise to the level of a constitutional violation.

Plaintiff also alleges that there are roaches and rats at KSR. Courts have generally held that this type of allegation alone is not sufficient to state an Eighth Amendment claim. *Brown v.*

8

*Withrow*, No. 92-1765, 1993 U.S. App. LEXIS 1724, at *3 (6th Cir. 1993) (holding that rats, roaches, and ants in cell for four days, while unpleasant, was "not below the constitutional standard of 'the minimal civilized measures of life's necessities'"); *Hancock v. Rowland*, No. 1:15-cv-00055, 2015 U.S Dist. LEXIS 95110 (M.D. Tenn. July 16, 2015) (allegation of infestation of spiders, rodents, lizards, and insects does not state an Eighth Amendment claim because no allegation of any injury or illness in connection with this condition); *Newsom v. Hall,* No. 3:12-cv-811, 2012 U.S. Dist. LEXIS 116140, 2012 WL 3579547, at *3 (M.D. Tenn. Aug. 17, 2012) ("The Court therefore finds that his allegations regarding the insect in his food and the sight of insects in the dining room do not rise to the level of a constitutional violation."); *Cable v. Wall*, No. 09-439 ML, 2010 U.S. Dist. LEXIS 37176, at *10 (D.R.I. Mar. 18, 2010) (allegations of ants, rodents, and mice in correctional facility not sufficiently serious to satisfy the objective component of the Eighth Amendment test, especially where Plaintiff has not alleged that he suffered, or will imminently suffer, any injury as a result of these conditions) (report and recommendation), adopted by 2010 U.S. Dist. LEXIS 37143 (D.R.I. Apr. 13, 2010); *Fortson v. Kern*, No. 05-CV-73223-DT, 2005 U.S. Dist. LEXIS 38466 (E.D Mich. Dec. 19, 2005) (allegation of insect and rodent infestation does not state a constitutional claim).

Finally, Plaintiff alleges that inmates are sometimes served undercooked meat, but he has not alleged any injury as a result. Courts have generally held that this type of allegation is also insufficient to meet the objective component of the Eighth Amendment standard. *See, e.g.*, *Chavis v. Fairman*, 51 F.3d 275 (7th Cir. 1995) (occasional service of spoiled food cannot be said to deprive inmates of basic nutritional needs); *Jackson v. Gusman*, No. 15-244 Section "C" (2), 2015 U.S. Dist. LEXIS 136243, at *17-18 (E.D. La. Aug. 31, 2015) (dismissing allegation of being served spoiled food on multiple occasions for failure to state a constitutional claim) (report

9

and recommendation), adopted by 2015 U.S. Dist. LEXIS 136241 (E.D. La. Oct. 2, 2015); *Lewis v. Taylor*, No. 3:16cv63/RV/EMT, 2016 U.S. Dist. LEXIS 128360 (N.D. Fla. Aug. 9, 2016) (allegations of service of substandard and spoiled food while in segregation failed to meet objective component of an Eighth Amendment claim); *Nickles v. Taylor*, Nos. 09-0313, 09-0557, 09-0679, 09-0952, 2010 U.S. Dist. LEXIS 47887, at *12 (D.N.J. May 14, 2010) ("A single or occasional incident involving spoiled food is insufficient to show that Plaintiff has been denied life's necessities. There is no evidence showing that . . . staff frequently served Plaintiff spoiled food, or that or that a significant portion of his diet consisted of spoiled food. Without such evidence, Plaintiff cannot establish an Eighth Amendment violation.)

In light of the above case law, the Court concludes that Plaintiff's allegations based upon his conditions of confinement fail to state a claim upon which relief may be granted.

### B. Religious Claims

Plaintiff's religious claims seem to be based on the fact that he believes he is not being served chicken and pork because these meats do not comply with a Muslim diet.[2] Plaintiff contends that this violates the Establishment Clause of the First Amendment which "keeps the Government from encouraging Plaintiff to follow a certain religion diet." Plaintiff then states that the Religious Freedom Restoration Act "provides and protects Plaintiff from Muslim Diet." He further states that all prisoners are protected by the Religious Land Use and Institutionalized Person Acts and that the Fourteenth Amendment provides all individuals with "equal protection . . . [which] means that a prison cannot make special rules or give special benefits to members of only one group of religious, or their Special foods or Diets." Although Plaintiff never states what religious beliefs, if any, he holds, the Court presumes, based upon these claims, that he is

---

[2] It is the Court's understanding that Muslim inmates should be provided a non-pork diet based upon their religious beliefs. However, Plaintiff seems to believe that a Muslim diet also prohibits chicken. The Court finds that Plaintiff's beliefs on this matter do not affect its analysis of his claims.

not a Muslim. As relief, Plaintiff requests an injunction that "all inmates receive pork and chicken at least once a week."

### 1. First Amendment Establishment Clause

The Establishment Clause of the First Amendment, applied to the States through the Fourteenth Amendment, states, "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I, cl. 1. To determine whether a government action has the effect of establishing religion, the United States Supreme Court has developed a three-part test. *See Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971). First, the Court must determine whether the action in question has a primarily secular purpose. *Id.*; *see McCreary Cty. v. ACLU of Ky.*, 545 U.S. 844, 859 (2005) ("*McCreary*"); *ACLU v. Mercer Cty.*, 432 F.3d 624, 635 (6th Cir. 2005); *ACLU v. McCreary Cty.*, 354 F.3d 438, 446 (6th Cir. 2003) ("*McCreary I*"). Second, the Court must examine the action to determine if its primary effect is to endorse religion. *Id.* Finally, the Court must determine if the action fosters an excessive entanglement with religion. *Lemon*, 403 U.S. at 612. If a governmental action fails any of these three tests, it violates the Establishment Clause of the First Amendment. *McCreary I*, 354 F. 3d at 458.

Plaintiff's claim is almost identical to the claim brought in *Rivers v. Mohr*, No. 1:12-CV-00026, 2012 U.S. Dist. LEXIS 48191 (N.D. Ohio Apr. 5, 2012). In that case, a prisoner claimed that the State of Ohio had violated the Establishment Clause by eliminating pork from all meals served to Ohio prison inmates. The *Rivers* court analyzed this claim under *Lemon* and concluded that the state's decision to eliminate pork from the diets of Ohio prison inmates did not violate the Establishment Clause. *Id.* at *4-7. The court first noted that there was "no objectively reasonable indication that the [state]'s decision to eliminated pork from prison diets was to establish the religion of Islam." *Id.* at 5. The court then observed as follows: "While the

11

removal of pork from prison meals may benefit Muslim as well as Jewish inmates, it also creates a meal that can be eaten by all inmates regardless of faith, and eliminates the need to provide specialized meals for each religious group." *Id*. The *Rivers* court further noted that the plaintiff had not alleged any facts to support his suggestion that the state made its decision or the primary purpose of promoting the practice of Islam. *Id*. The court then noted that the plaintiff had not alleged facts to suggest that a reasonable person would conclude that the menu change endorsed the Muslim faith since several faith prohibit the consumption of pork. *Id*. at 6. Finally, the *Rivers* court concluded that Ohio's decision to adopt a pork-free menu had "very little entanglement with a particular religion." *Id.* at *7. In so holding, the court observed: "Although some inmates may find it easier to observe dietary restrictions, the [state] has not become involved in the actual practice of a religion, nor is there any indication that it intends to take on a more active role in religious observations." *Id*.

This Court finds that the reasoning of the *Rivers* court applies equally to Plaintiff's Establishment Clause claim and likewise concludes that the claim must be dismissed for failure to state a claim upon which relief may be granted.

### 2. Fourteenth Amendment Equal Protection Clause

Plaintiff also seems to claim that Defendants have denied him equal protection of the law by eliminating certain meats from the diet of all prisoners to comply with the religious diet requirements of some prisoners. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold

element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers. In this case, Plaintiff has not alleged disparate treatment. To the contrary, Plaintiff seemingly objects to being treated the same as all other inmates. He does not allege he was denied certain meat while all other inmates were served this dish. Instead, he complains that all inmates are treated the same, regardless of whether they have a religious dietary restriction of this nature. Without a showing of different treatment, Plaintiff fails to state a claim for denial of equal protection. *See, e.g.*, *Rivers v. Mohr*, 2012 U.S. Dist. LEXIS at *14-15 (holding no equal protection claim where state implemented policy eliminating pork from the diet of all prisoners).

### 3. Religious Land Use and Institutionalized Person Act

Plaintiff also alleges that his rights have been violated under the Religious Land Use and Insitutionalized Persons Act (RLUIPA). RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability," unless the government can show (1) that the imposition of the burden "is in furtherance of a compelling governmental interest," and (2) that the burden furthers that interest by use of the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA, thus, requires an inmate to show that his or her religious exercise was substantially burdened. *See Cutter v. Wilkinson*, 423 F.3d 579, 583 (6th Cir. 2005). An action will be classified as a substantial burden "when that action forced an individual to choose between 'following the precepts of her religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th

Cir. 2007) (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717-18 (1981)). Here, Plaintiff has not alleged that any government action has substantially burdened the exercise of his religion; indeed, he has not even identified what his religion is. For these reasons, the Court concludes that Plaintiff has failed to state a claim for which relief may be granted under RLUIPA.[3]

### IV. CONCLUSION

For the foregoing reasons, this action will be dismissed by separate Order.

Date: January 26, 2017

**David J. Hale, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
　　Defendants
　　General Counsel, Justice and Public Safety Cabinet
4415.011

---

[3] Plaintiff also invokes the Religious Freedom Restoration Act (RFRA), but the Supreme Court has held that RFRA is unconstitutional as applied to the States. *City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997). *See also Cutter v. Wilkinson*, 423 F.3d at 582 (6th Cir. 2005).